

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable L. W. Vance
County Attorney
Titus County
Mt. Pleasant, Texas

Dear Sir:

Opinion No. 0-6540
Re: Whether specified transpor-
tation of petroleum products
is exempt from regulation
under Motor Carrier Act by
reason of Sec. 1a (1) (c) and
Sec. 1b, Article 911b, Vernon's
Annotated Civil Statutes.

We have your opinion request reading as follows:

"I desire your opinion on a case that has arisen here under the Motor Carrier and Contract Carrier's Law. The case as best that I can state it thus:

"The driver of a truck was charged with oper- ating a motor carrier without a permit. It seems that the operator of this truck is a distributor of Gasoline, having a storage tank in Hope, Arkansas, from which he both wholesales and retails. He comes into Texas and buys his products and sometimes de- livers them direct to his customer without having placed them in his storage tank. He states that about 75% of the products go through his storage. He seems to have 4 trucks hauling merchandise to the storage and two trucks that deliver to the customer. He sells products both in Arkansas and Texas. He does not haul any one else merchandise but always buys the gasoline at the refinery and sells it wherever he may desire.

"The question arises as to whether or not he is required to have a Motor Carrier's Permit to pperate his trucks as stated above."

Hon. L. W. Vance, page 2

The question presented is whether or not the transportation of petroleum products under the circumstances stated in your letter is exempted from regulation under the Texas Motor Carrier Act by that part of House Bill No. 25, Chapter 290, Acts of the 47th Legislature, page 463 (Sec. 1a (1), Sec. 1a (1) (C) and Sec. 1b of Art. 911b, Vernon's Annotated Civil Statutes), which reads as follows:

"Sec. 1a (1) Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding section shall not be held to include:  . . .

"(c) Where merely incidental to a regular, separate, fixed, and established business, other than a transportation business, the transportation of employees, petroleum products, and incidental supplies used or sold in connection with the wholesale or retail sale of such petroleum products from the refinery or place of production or place of storage to the place of storage or place of sale and distribution to the ultimate consumer, in a motor vehicle owned and used exclusively by the marketer or refiner, or owned in whole or in part and used exclusively by the bona fide consignee or agent of such single marketer or refiner; as well as where merely incidental to a regular, separate, fixed and established business, other than a transportation business, the transportation of petroleum, employees, material, supplies, and equipment for use in the departments of the petroleum business by the bona fide owner thereof in a vehicle of which he is the bona fide owner; bona fide consignee or agent as used herein being hereby defined and construed, for the purpose of this Act, to mean a person under contract with a single principal to distribute petroleum products in a limited territory and only for such single principal; . . . .

"Sec. 1b. Any person who transports goods, wares, or merchandise under the circumstances set forth in the foregoing Section 1a so as to be excluded by the terms of said Section from the definition of 'motor carrier' or 'contract carrier' shall be deemed to be a private

Hon. L. W. Vance, page 3

motor vehicle owner; and such use of the highways
by such private motor vehicle owners, as herein
defined, shall be construed as use of the highways
for the general public and not the use of such
highways for the carrying on the business of trans-
porting property for compensation or hire."

The caption of this act reads as follows:

"An Act amending Chapter 277, Acts of the
Regular Session of the Forty-second Legislature
as heretofore amended, by adding Sections 1a and
1b thereto; excepting from the definition of 'Motor
Carrier' and 'Contract Carrier' certain persons,
firms, and corporations; exempting certain persons,
firms, and corporations transporting under certain
circumstances and conditions their own employees,
property or property in which they have an interest
as consignee or agent; defining a private motor
vehicle owner; exempting private motor vehicle
owners from said Act; providing for the repeal of
all laws and parts of laws in conflict with this
Act; providing that if any section, clause or pro-
visions of this Act be held unconstitutional or
invalid, it shall not affect the remaining portions;
and declaring an emergency."

The caption makes it clear that the purpose of this
Act was to exempt certain persons transporting under certain
conditions their own property from the provisions of the Motor
Carrier Act. The person mentioned in your letter was trans-
porting "petroleum" as an incident "to a regular, separate,
fixed and established business." He is not engaged in the
"transportation business" as such and the "petroleum" which
he is transporting belongs to him. Also, he is the bona fide
owner of the vehicles in which the petroleum is being trans-
ported. The word "petroleum" includes gasoline, United States
va. Fletcher, 87 F. Supp. 238. These facts would seem to be
sufficient to bring the person charged within the second part
of the exemption as set out in subdivision (c) quoted above.

The person charged is also a "marketer" within the meaning of that term as used in the first part of the exemption as set out in subdivision (c), quoted above. The term "marketer" has been considered by this department in one of our prior opinions, being Opinion No. O-5851. It was there said:

"Webster defines 'Marketer' as one who attends a market to buy or sell; one who carries goods to market.

"We do not feel that we would be justified in acceding to the view that 'marketer' as here used is synonymous with 'carrier.' First, because the Legislature throughout this Act repeatedly says that the transportation must be incidental to a business other than a transportation business. And in the second place 'marketing' in ordinary usage connotes more than transportation. For example, in its latest catalogue the School of Business Administration of the University of Texas divides its subjects under thirteen major heads, including 'Marketing' and 'Transportation and Industry'; under 'Marketing' it lists a dozen courses dealing with consumer purchasing, salesmanship, retailing, wholesaling, chain store systems, cooperative chains but not with transportation. Under 'Transportation and Industry' are listed transportation courses in air, motor and water transportation. From the Columbia Encyclopedia's compendium on marketing we quote the following:

'Marketing is promoted by salesmanship and by advertising. Mail-order houses sell by catalogue at retail, especially the rural buyers. Some products are marketed by house to house canvassing. Chain stores eliminate some of the expense of marketing by combining retail sales with wholesale purchases or with manufacturing. Cooperative organizations of consumers and of producers as farmers, seek also to diminish the spread in marketing.'

"The term 'marketing' assumes the existence of trade so buying and selling are necessary incidents to 'marketing'. 38 C. J. 1258, 1259.

"'To market' has been defined judicially and by lexicographers as 'to buy or sell; *** to sell in a market'. <u>Harding v. San Saba National Bank</u>, 13 S. W. (2d) 121, 122."

You are therefore advised that in our opinion the person charged, under the facts set out in your letter, is not required to have a permit from the Texas Railroad Commission.

We are not here passing on the question of whether the person charged might be prosecuted under Federal Law. The Federal Motor Carrier Act of 1935 (49 U. S. C. A. Sec. 306) requires a certificate of convenience and necessity for common carrier motor vehicles engaged in interstate commerce. This certificate is issued by the Interstate Commerce Commission in Washington, D. C.

Trusting that the foregoing answers your inquiry, we are,

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By _Fagan Dickson_

Fagan Dickson
Assistant.

FD:rt

APPROVED MAY 8 1945

APPROVED
OPINION
COMMITTEE
BY BWB